***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties entered into a pretrial agreement on January 23, 2001, which is a part of the record.
2. The parties submitted a collection of medical records and other documents, which is marked stipulated Exhibit 1.
3. On or about April 25, 1999, an employment relationship existed between plaintiff and defendant-employer.
4. At the time of plaintiff's alleged injury, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage at the time of his alleged injury was Five Hundred Three and 37/100 Dollars ($503.37), which yields a compensation rate of Three Hundred Thirty-Five and 60/100 Dollars ($335.60).
6. The deposition of Dr. Martin M. Henegar is a part of the evidentiary record in this matter.
 EVIDENTIARY RULINGS ON OBJECTIONS RAISED DURING DEPOSITION
All objections raised during the deposition of Dr. Henegar have been ruled upon in accordance with applicable law and the Rules of Evidence.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 33 years of age. He completed the tenth grade and subsequently obtained his GED.
2. Plaintiff began employment on August 5, 1996 with defendant-employer, a manufacturer of tire cord, as a team member, which required plaintiff to perform a variety of tasks. On April 25, 1999, plaintiff was employed as a cable operator and his duties included placing bobbins of polyester thread onto a cabling machine, which wound the individual threads into a cord or "cable". The bobbins of thread handled by plaintiff weighed 8 to 8.5 pounds, depending on the type of material they contained. Bobbins were removed from a cart and placed onto spindles on the cabling machine. Some of the spindles were above plaintiff's head when he stood on the floor. Plaintiff could reach overhead to load the bobbins or he could use a lift device, which placed the top row of spindles around waist level.
3. Plaintiff contends that he was injured on April 25, 1999, when he lifted a bobbin from the bottom of the bobbin cart and experienced a "pop" in his neck as he reached overhead to place the bobbin onto the cabling machine. Plaintiff's testimony is contrary to the greater weight of the evidence of record and lacks credibility.
4. Defendant-employer's records show that plaintiff did not work on April 25, 1999. Plaintiff's crew last worked on April 21, 1999 and did not return until April 26, 1999. However, plaintiff did not work April 26, 1999 through April 28, 1999 because he requested a leave of absence for these three days to take care of his wife, who had fallen and injured her coccyx.
5. When plaintiff began employment with defendant-employer, he participated in an orientation program, during which he received instructions on when and how to report work-related injuries. Defendant-employer's standard procedures for reporting work-related injuries require that all injuries be reported immediately to the employee's process coordinator or supervisor or to the shift manager, who then assesses the need for medical treatment. Thereafter the incident would be investigated and an incident report form completed. This form would then be routed to the safety engineer for follow-up.
6. Plaintiff did not report an alleged neck injury to his process coordinator, Greg Ford, or to his shift supervisor, Roger Smart, on April 25, 1999, or at any time thereafter. Mr. Smart and Mr. Ford first learned about plaintiff's alleged work-related injury in March 2000, after plaintiff filed a Form 18.
7. Plaintiff consulted Dr. Renu Bale on April 26, 1999, at which time he complained of anxiety and "aching all over". Plaintiff reported general life stress and specifically mentioned stress associated with his children. Plaintiff further indicated to Dr. Bale that he had a "good job". Significantly, plaintiff did not mention sustaining a neck injury at work the previous day.
8. Plaintiff saw Dr. Phillip Day on May 21, 1999 and complained of neck and back pain. Plaintiff reported a history of "many accidents" that plaintiff believed contributed to his pain. However, plaintiff did not mention an April 25, 1999 injury at work or any other injury at work. Dr. Day recorded that plaintiff had been involved in a motor vehicle accident previously and that a tree had fallen on plaintiff approximately two and one-half (2 and ½) years earlier.
9. When plaintiff saw Dr. Day on May 25, 1999, he presented Dr. Day with an Accident/Sickness Status Report to be completed by a physician in order that plaintiff could qualify for a medical leave of absence and disability benefits through defendant-employer's accident and sickness program. Plaintiff completed the top portion of the form and indicated that his condition was not "due in anyway" to his employment. Dr. Day completed his portion of the form to indicate plaintiff's condition was not related to his employment.
10. Dr. Day referred plaintiff to Dr. Mark Henegar, a neurosurgeon, who initially examined plaintiff on June 8, 1999. Plaintiff completed two information forms for Dr. Henegar's office. In completing the "face sheet," plaintiff specifically indicated that he was not injured at work. The more comprehensive Patient Registration form required plaintiff to report his symptoms, the date they began, and how they started. However, plaintiff left these questions blank. In addition to the questionnaires completed by plaintiff, Dr. Henegar obtained a personal history from plaintiff of neck pain for two years. Plaintiff indicated to Dr. Henegar that he lifts large rolls of fabric above his head at work. However, plaintiff did not describe any specific incident or injury when lifting a bobbin of thread to Dr. Henegar on June 8, 1999, or at any other time while under Dr. Henegar's care.
11. Plaintiff had Dr. Henegar complete a series of Accident/Sickness Status Reports, none of which indicated plaintiff was injured on the job. On the portion of the forms completed by plaintiff, he consistently indicated his condition was not due to his employment. Dr. Henegar made similar notations on the portions of the forms he completed. Dr. Henegar indicated that he completed the forms in this fashion, because plaintiff never described to him a specific injury at work.
12. Dr. Henegar's diagnostic studies indicted plaintiff had degenerative disc disease at C5-6. Degenerative disc disease can cause symptoms, including neck and arm pain, without precipitating trauma. On July 16, 1999, Dr. Henegar performed a left C5-6 posterior diskectomy and thereafter released plaintiff to return to work on August 5, 1999. Plaintiff returned to Dr. Henegar on August 19, 1999, complaining of recurrent shoulder and neck pain, which had developed gradually without a specific injury or event. Consequently, on September 17, 1999, Dr. Henegar performed an anterior cervical diskectomy and fusion. Plaintiff was again released to return to work. However, on September 29, 2000, Dr. Henegar performed a posterior cervical fusion, C5-6. Subsequently, plaintiff reached maximum medical improvement by January 18, 2001, with restrictions of no repetitive lifting greater than 20 pounds, especially above the shoulders.
13. Considering the testimony of all the witnesses and the demeanor of the witnesses as observed by the Deputy Commissioner, the greater weight of the evidence indicates that plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on April 25, 1999. The greater weight of the evidence establishes that plaintiff had experienced problems with his neck for a period of at least two years prior to his alleged injury and that any symptoms he experienced on April 25, 1999, were a continuation of his pre-existing degenerative condition and not the result of an interruption of his work routine or a specific traumatic incident of his assigned work or of any aggravation of his pre-existing condition.
14. Furthermore, the greater weight of the medical evidence fails to establish that plaintiff's alleged condition and disability causally resulted from any incident during his employment with defendant-employer.
15. Defendant-employer did not receive notice of plaintiff's alleged injury until on or about March 7, 2000, when defendant-employer received a Form 18 dated March 2, 2000. Plaintiff worked off and on with defendant-employer and otherwise had regular contact with defendant-employer between April 25, 1999 and February 2000. Plaintiff did not offer any reasonable excuse for his failure to provide timely notice of his alleged injury. Defendant-employer was prejudiced by plaintiff's delay in providing notice in that defendant-employer was not given an opportunity to provide immediate medical treatment or to reasonably investigate plaintiff's claim
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on April 25, 1999. N.C.G.S. § 97-2(6).
2. Assuming arguendo that plaintiff did sustain an injury by accident or specific traumatic incident on or about April 25, 1999, plaintiff failed to provide timely notice of his alleged injury and did not offer any reasonable excuse for his failure to provide timely notice to defendant-employer. Defendant-employer was prejudiced by plaintiff's failure to provide timely notice of his alleged injury. N.C.G.S. §97-22.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff claim must be, and the same hereby is DENIED.
2. Defendants shall pay the costs, including an expert witness fee, if not already paid, to Dr. Henegar as approved by the Commission in the amount of $525.00.
This the ___ day of March 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER